UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| | : | |
| v. | : | VIOLATION: |
| | : | 18 U.S.C. § 371 (Conspiracy to |
| | : | Violate IEEPA and Defraud the |
| | : | United States) |
| ESSENTRA FZE | : | |
| COMPANY LIMITED, | : | FORFEITURE: 21 U.S.C. § 853(p); |
| | : | 18 U.S.C. § 981(a)(1)(C); and 28 |
| Defendant. | : | U.S.C. § 2461(c) |

## INFORMATION

The United States charges that:

COUNT ONE
CONSPIRACY TO VIOLATE IEEPA AND DEFRAUD THE UNITED STATES
(18 U.S.C. § 371)

At all times material to this Information:

General Allegations

1. Essentra FZE Company Limited ("Essentra FZE") was incorporated in the United Arab Emirates ("UAE") and sold tobacco products to over twenty-five customers worldwide, including companies in South Africa, Jordan, and the UAE. From in or about 2013 to in or about March 2019, Essentra FZE was a subsidiary of Essentra MEA PTE LTD. Essentra MEA PTE LTD was a joint venture with Company 1, an Indian-based tobacco company ("Indian Company 1"). In or about March 2019, Essentra MEA PTE LTD, and by extension Essentra FZE, became wholly-owned subsidiaries of U.K.-based Essentra PLC.

2. The International Emergency Economic Powers Act ("IEEPA"), codified at Title 50 U.S.C. Section 1701 *et seq.*, enacted in 1977, authorizes the President to impose

1

economic sanctions in response to an unusual or extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.  Pursuant to Title 50 U.S.C. Section 1705, willfully violating, attempting to violate, conspiring to violate or causing a violation of IEEPA is a criminal offense punishable by a fine of up to $1,000,000 and/or imprisonment for not more than 20 years.

3.      The Departments of the Treasury, Commerce, and State enforce and administer economic sanctions under their respective authorities, to accomplish U.S. foreign policy and national security goals.  In particular, the Department of the Treasury publishes a publicly available list of individuals and entities ("Specially Designated Nationals and Blocked Persons" or "SDNs") targeted by U.S. economic sanctions.  SDNs' property and interests in property, subject to U.S. jurisdiction or in the possession and control of U.S. persons, are blocked when they are placed on the SDN list.  U.S. persons, including U.S. financial institutions, are generally prohibited from dealing with SDNs and their property and interests in property.

4.      Using the powers conferred by IEEPA, the President and the Executive Branch have issued orders and regulations governing and prohibiting certain transactions with countries, individuals, and entities suspected of proliferating Weapons of Mass Destruction ("WMD").  On November 14, 1994, the President issued Executive Order 12938, finding "that the proliferation of nuclear, biological, and chemical weapons ('weapons of mass destruction') and of the means of delivering such weapons, constitutes

an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and [declaring] a national emergency to deal with that threat."

5. On June 28, 2005, the President, to take additional steps with respect to the national emergency described and declared in Executive Order 12938, issued Executive Order 13382 ("Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters") to target proliferators of WMD and their support networks and to deny designated proliferators access to the U.S. financial and commercial systems. Executive Order 13382 authorized the United States Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the Executive Order. Pursuant to that authority, on April 13, 2009, the Secretary of the Treasury promulgated the "Weapons of Mass Destruction Proliferators Sanctions Regulations." See 31 C.F.R. § 544.101 *et seq*. Executive Order 13382 and the Weapons of Mass Destruction Proliferators Sanctions Regulations prohibit transactions or dealings by any U.S. person or within the United States with individuals and entities placed on the SDN list, unless exempt or authorized by the Office of Foreign Assets Control (OFAC), which was located in Washington, D.C.

6. On March 15, 2016, the President, to take additional steps with respect to the previously described national emergency, issued Executive Order 13722 to address the Government of North Korea's continuing pursuit of its nuclear and missile programs. Pursuant to that authority, on March 16, 2016, the Secretary of the Treasury promulgated the "North Korea Sanctions Regulations." See 31 C.F.R. § 510.101 *et seq*. Executive Order 13722 and the North Korea Sanctions Regulations prohibit the export of financial

services from the United States or by any U.S. person to North Korea, unless exempt or authorized by OFAC.

7. Executive Orders 13,466 and 13,722, and North Korea Sanctions Regulations also prohibited any transaction by any U.S. person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, any prohibition set forth in these regulations.

8. Executive Orders 13,382 and 13,722, the Weapons of Mass Destruction Proliferators Sanctions Regulations, and North Korea Sanctions Regulations also prohibited any transaction by any U.S. person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, any prohibition set forth in these regulations.

9. From in or around October 2017 through in or around December 2018, defendant Essentra FZE conspired with others known and unknown to cause the export of financial services from the United States to North Korea, without seeking or obtaining the requisite licenses from OFAC.  In so doing, the co-conspirators defrauded the U.S. Government by interfering with and obstructing a lawful function of the U.S. Government, that is, the enforcement of the North Korea Sanctions Regulations.

The Conspiracy and Its Goals

10. From in or around October 2017 through in or around September 2018, in the District of Columbia and elsewhere, the defendant, ESSENTRA FZE, and others, both known and unknown to the United States Attorney and the National Security Division of the United States Department of Justice, unlawfully, wilfully and knowingly combined, conspired, confederated and agreed with one another and with others to commit offenses

against the United States, that is, causing the export of financial services from the United States to North Korea, without seeking or obtaining the requisite licenses from OFAC, in violation of IEEPA, and in so doing defrauded the U.S. Government by interfering with and obstructing a lawful government function, that is, the enforcement of the North Korea Sanctions Regulations.

## Goals of the Conspiracy

11. The goals of the conspiracy were:

    a. to enrich the defendants and co-conspirators;

    b. to conduct transactions in U.S. dollars with North Korean entities otherwise barred from accessing the U.S. financial system;

    c. to facilitate the purchase of products and services for North Korean end users; and

    d. to evade relevant regulations, prohibitions on export of financial service, and licensing requirements using deceit.

## Manner and Means of the Conspiracy

12. The manner and means by which defendants and their co-conspirators sought to accomplish the goals of the conspiracy, included, among others, the following:

    a. the defendant and co-conspirators agreed to surreptitiously export tobacco-related products to North Korea;

    b. defendant and co-conspirators used a non-transparent method of payment, namely, using front companies, to conceal the involvement of North Korean entities, and in so doing deceiving financial institutions in the United States to process payments; and

5

c. defendant and co-conspirators listed false end destinations and customers on documents such as shipping documents and invoices in order to conceal the true destinations and end users from United States enforcement authorities and others.

Overt Acts

22. In furtherance of the conspiracy and to achieve the goals and purposes thereof, the defendant and co-conspirators, both known and unknown to the United States, committed and caused to be committed, in the District of Columbia and elsewhere, the following overt acts, among others:

a. In or about October 2017, a co-conspirator Essentra FZE employee received a warning from another co-conspirator that an intermediary company would have to be used to receive payments for a customer in North Korea due to sanctions.

b. On or about February 22, 2018, a co-conspirator told a co-conspirator employee of Essentra FZE to not mention North Korea in any of the contract documents, and to falsely name China as the end destination for Essentra FZE's products.

c. On or about July 14, 2018, Essentra FZE caused two invoices to be sent to two North Korean co-conspirators, which invoices falsely listed a front company and an end destination of Dalian, China for Essentra FZE's products.

d. On or October 15, 2018, Essentra FZE received a wire payment for $149,630.88 from a front company, which payment transited through the United States, and for which no OFAC license was sought or obtained.

(**Conspiracy to Violate IEEPA and Defraud the United States**, in violation of Title 18, United States Code, Section 371)

## FORFEITURE ALLEGATION

1.      Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  The United States will seek entry of a forfeiture money judgment equal to the value of all property, real or personal, which constituted or was derived from proceeds traceable to this offense.

2.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the Court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28 United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p))

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY

7/15/2020
DATE

Zia M. Faruqui
Assistant United States Attorney

JOHN C. DEMERS
ASSISTANT ATTORNEY GENERAL
NATIONAL SECURITY DIVISION

7/15/2020
DATE

  /s/ *David C. Recker*
David C. Recker
Trial Attorney
Counterintelligence and Export Control Section